IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TY RUTH, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-1371 |
| | : | |
| THE HOME DEPOT, | : | |
|     Defendant. | : | |

MEMORANDUM

**MARSTON, J.**                                                                                                                                                                     August 20, 2025

      Currently before the Court is an Amended Complaint filed by *pro se* Plaintiff Ty Ruth that alleges violations of the Americans with Disabilities Act ("ADA") and a state law claim for wrongful termination against her former employer, The Home Depot. (Doc. No. 12.) For the following reasons, the Court dismisses the Amended Complaint in its entirety. Ruth's federal claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and her state law claim is dismissed without prejudice for lack of subject matter jurisdiction.

**I.    BACKGROUND**[1]

    **A.**    **Ruth's Initial Complaint**

      In Ruth's initial Complaint (Doc. No. 2), she claimed that Home Depot violated the ADA by failing to provide her a reasonable accommodation, retaliating against her, failing to promote her, and terminating her employment. (*Id.* at 1–3.) Ruth alleged that she has Asperger's Syndrome, so "sometimes [her] social cues [are] off." (*Id.* at 3.) She averred that the store manager started retaliating against her in December 2023 by marking her as "insubordinate,"

---

[1] The facts set forth in this Memorandum are taken from Ruth's Amended Complaint (Doc. No. 12). The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

after Ruth had provided "honesty feedback" at a townhall meeting. (*Id.*) Ruth alleged that she contacted two human resources representatives about the "retaliation and harassment," and in April 2024, she submitted a request "for accommodations on switching stores as it was a conflict of interest" for her to remain in her position. (*Id.*) But instead of granting this request, the manager "decided to make a fake investigation to get [Ruth] terminated" (*id.*), and her employment was terminated on May 5, 2024 after she was found to be "disrespectful and unprofessional, constituting a Major Violation of the Company's Standards of Performance Respect Policy" (Doc. No. 2-1 at 5).

    In an April 22, 2025 Memorandum and Order, this Court screened the initial Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed it without prejudice to amendment. *See generally Ruth v. Home Depot*, No. 25-1371, 2025 WL 1171216 (E.D. Pa. Apr. 22, 2025); (*see also* Doc. Nos. 7, 8). With respect to her ADA discrimination claims, the Court concluded that Ruth failed to state a plausible ADA claim because she did not adequately allege that she suffers from a disability or that Home Depot failed to accommodate any disability or discriminated against her because of it. *Ruth*, 2025 WL 1171216, at *3. Specifically, Ruth did not allege how she was substantially limited by her Asperger's Syndrome, nor did she identify what, if any, accommodations she required that Home Depot failed to provide. *Id.* Moreover, even if she had sufficiently alleged that she suffers from a disability, Ruth failed to allege that Home Depot was aware of her Asperger's Syndrome diagnosis or that she requested a reasonable accommodation. *Id.* With respect to her ADA retaliation claim, the Court found that Ruth failed to allege that she engaged in protected activity under the ADA or that there was a causal connection between any alleged protected activity and the adverse employment action. *Id.* at *4. Ruth was provided an opportunity to file an amended complaint in the event she could "flesh out [her] allegations

by . . . explaining in [the] amended complaint the 'who, what, where, when and why' of [her] claim." *Id.* (citations omitted).

### B.  Ruth's Amended Complaint

Ruth returned with an Amended Complaint against Home Depot, reasserting claims for "unlawful retaliation and discrimination" in violation of the ADA and adding a state law claim for "wrongful termination in violation of public policy under Pennsylvania law." (*See* Doc. No. 12 at 1–3.)[2]  Ruth avers that she has been subjected to "adverse employment actions, including false accusations, harassment, and eventual termination, after reporting illegal conduct and disclosing a disability." (*Id.* at 1.)

According to the Amended Complaint, Ruth began her employment at Home Depot in August 2023 at which time she allegedly advised a department supervisor[3] that she had Asperger's Syndrome and ADHD.  (*Id.* at 1-2.)  Ruth asserts that she disclosed this information to "ensure accommodations and understanding in communication." (*Id.*)  In September 2023, Ruth allegedly "witnessed managers engaging in misconduct, including giving away free products" and "'moonlighting' to benefit friends at the company's expense." (*Id.* at 2.)  Ruth avers that she reported these activities through "The Home Depot's internal 'Aware Line'" and to two associates in the Human Resources Department.  (*Id.*)  Ruth contends that following her

---

[2] On June 28, 2025, Ruth filed a copy of the Amended Complaint that was missing the civil action number, her contact information, and the date of filing.  (*See* Doc. No. 11.)  Two days later, on June 30, 2025, Ruth filed a revised version that contained the missing information.  (*See* ECF No. 12.)  The two pleadings are identical but for the missing information.  Accordingly, the Court will disregard the pleading filed on June 28, 2025 and will consider the pleading filed on June 30, 2025 to be the operative Amended Complaint.

[3] Ruth referred to this person as the "ASDS." (Doc. No. 12 at 2.)  ASDS stands for "Associate Support Department Supervisor," and this person supports store associates and assists with various human resources-related tasks.  *See* The Home Depot Careers, https://careers.homedepot.com/career-areas/retail/department-supervisor (last visited July 15, 2025).

3

report, she "experienced escalating retaliation," which included: (1) being falsely accused of threatening workplace violence; (2) forcible removal of her work phone by a manager in March 2024; (3) frequent, unfounded disciplinary meetings by the store manager; (4) unequal treatment and denial of recognition; and (5) harassment regarding restroom use and medical needs in April 2024. (*Id.*) Ruth asserts that she was terminated in May 2024 "based on false allegations, including claims that she made inappropriate comments in front of customers." (*Id.*) Ruth contends that "her termination was a direct result of her protected activity (reporting misconduct) and her disability." (*Id.*) She seeks compensatory and punitive damages as well as reinstatement or front pay in lieu thereof. (*Id.* at 3.)

## II.  STANDARD OF REVIEW

As Ruth is proceeding *in forma pauperis* (*see* Doc. No. 8), 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At the screening stage, the Court accepts the facts alleged in Ruth's *pro se* Amended Complaint as true, draws all reasonable inferences in Ruth's favor, and "ask[s] only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Ruth is proceeding *pro se*, the Court construes her allegations

liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id; see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support." (quoting *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002))).

### III.    DISCUSSION

Ruth alleges unlawful discrimination and retaliation in violation of the ADA as well as "wrongful termination in violation of public policy under Pennsylvania law."  (Doc. No. 12 at 1.)  She avers that she was subject to "adverse employment actions, including false accusations, harassment, and eventual termination, after reporting illegal conduct and disclosing a disability."  (*Id.*)  The Court considers Ruth's federal claims before turning to her state law claims.

#### A.    Federal Claims

Ruth brings ADA claims for unlawful discrimination and unlawful retaliation.  The Court addresses the viability of each claim in turn.

##### 1.    ADA Discrimination Claim

Ruth's ADA discrimination claim rests on two buckets of allegedly unlawful conduct: (1) Home Depot failed to accommodate her disability, and (2) Home Depot treated her less favorably than similarly situated employees without disabilities and terminated her employment because of her disability (i.e., it discriminated against her).  (Doc. No. 12 at 2); *see also Taylor v.*

5

*Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) (explaining that discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities but also includes failing to make reasonable accommodations for a plaintiff's disabilities"). To state a claim for a failure to accommodate under the ADA, a plaintiff must allege sufficient facts to support a reasonable inference that: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). To state a plausible discrimination claim under the ADA a plaintiff must allege: (1) that she is disabled within the meaning of the ADA; (2) that she is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) she suffered an adverse employment decision as a result of the discrimination. *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted).

For both claims, Ruth must allege that she was disabled within the meaning of the ADA, i.e., that she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Capps*, 847 F.3d at 157 (citing 42 U.S.C. § 12102(1)). Under the first element, "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* at § 12101(2)(A). The 2008 ADA Amendments Act clarified that the definition of disability and "substantially limits" should be construed "in favor of broad coverage of individuals . . . to the

6

maximum extent permitted." 42 U.S.C. § 12102(4)(A)-(B).  However, "to sufficiently allege that an impairment interferes with a major life activity, a plaintiff must elaborate on whether the alleged impairment interfered with [her] alleged major life activity during the period of alleged discrimination by Defendants," and "the plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations." *Earl v. Good Samaritan Hosp. of Suffern NY*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022) (cleaned up), *aff'd*, No. 22-2505, 2023 WL 8708417 (2d Cir. Dec. 18, 2023).

Ruth has not stated a plausible ADA discrimination claim because she has not adequately alleged that she suffers from a disability or that Home Depot failed to accommodate any disability or discriminated against her because of it.  Ruth alleges in conclusory fashion that she has Asperger's Syndrome and ADHD (*see* Doc. No. 12 at 1), but she does not explain how she is limited by her Asperger's Syndrome or ADHD and what, if any, accommodations she required as a result of these conditions that Home Depot failed to provide.  *See Sally-Harriet v. N. Child. Servs.*, No. 17-4695, 2019 WL 1384275, at *5 (E.D. Pa. Mar. 26, 2019) (finding the plaintiff's complaint did not include any facts explaining how major life activities were limited, let alone, how they were "*substantially limited*, which she is required to do"); *Lee v. Univ. of Pa., Sch. of Dental Med.*, No. 19-835, 2019 WL 4060843, at *4 (E.D. Pa. Aug. 27, 2019) (finding the plaintiff's complaint failed to allege a disability because there were no factual allegations describing how the alleged disability impacted their daily life or otherwise substantially limited a major life activity).  Although a plaintiff need not "go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations" at the pleading stage, she still must allege some facts to support an inference that she suffered from a

7

disability within the meaning of the statute. *Fowler*, 578 F.3d at 213; *Karipidis v. ACE Gaming LLC*, No. 09-3321, 2010 WL 2521209, at *8 (D.N.J. June 9, 2010) ("By simply stating that the plaintiff lives with an injury, illness or impairment without alleging that the impairment substantially limits a major life activity creates a defect in the Complaint."). By listing her impairments without any facts about how they limit her, Ruth has not adequately alleged that she suffers from a disability.

Even if Ruth had adequately alleged that she suffers from a disability within the meaning of the ADA, her claim would still fail because Ruth has failed to allege any facts to suggest Home Depot denied her a reasonable accommodation or discriminated against her because of a disability. Beginning with her accommodation theory, Ruth alleges that during onboarding she disclosed that "she has Asperger's Syndrome and ADHD . . . to ensure accommodation and understanding in communications that may arise." (*Id.* at 1–2.) It is unclear from this allegation whether Ruth explicitly requested an accommodation or merely disclosed that she had "Asperger's Syndrome and ADHD" in the hopes it would lead to "understanding in communications that may arise." But even if we read this allegation to say that Ruth requested an accommodation, she has not shown that Home Depot denied that request. *See, e.g.*, *Brister v. Emp. Opportunity & Training Ctr. of Ne. Pa. Inc.*, No. 22-2047, 2023 WL 4424255, at *2 (M.D. Pa. July 10, 2023) (dismissing ADA claim for failure to accommodate where plaintiff alleged only in conclusory fashion that her employer failed to provide reasonable accommodations for her disability).

Her discrimination theory similarly fails. Although Ruth states that Home Depot "treated her less favorably than similarly situated employees without disabilities," she provides no discussion or examples of unfavorable treatment. (Doc. No. 12 at 2.) Similarly, Ruth states in

8

conclusory fashion that "her termination was a direct result of . . . her disability," but has not provided any allegations to support that conclusion or otherwise tied her termination to her disability. (*Id.*) Instead, her allegations suggest that she was terminated because she reported that certain managers were engaging in misconduct. (*See id.* (alleging that she "experienced escalating retaliation" after she reported her concerns that managers were "giving away free products . . . and 'moonlighting' to benefit friends at the company's expense").)

In sum, Ruth has failed to allege sufficient facts to state a plausible claim for disability discrimination under the ADA.

### 2. ADA Retaliation Claim

That leaves Ruth's ADA retaliation claim. The ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." *Id.* This provision is similar to Title VII's prohibition of retaliation. *See* 42 U.S.C. § 2000e-3(a). Accordingly, courts analyze ADA retaliation claims under the same framework employed for retaliation claims arising under Title VII. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) ("Because the anti-retaliation provisions of the ADA and ADEA are nearly identical, as is the anti-retaliation provision of Title VII, . . . precedent interpreting any one of these statutes is equally relevant to interpretation of the others.") (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing cases)).

To state a retaliation claim, Ruth must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she

engaged in protected activity under the ADA; (2) the employer took adverse action against her; and (3) a causal link exists between the protected activity and the adverse employment action.[4] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Connelly*, 809 F.3d at 789; *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). As this Court previously explained, a general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that she complained specifically about unlawful discrimination. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

Ruth alleges that she reported misconduct in September 2023 which in turn led to her experiencing "escalating retaliation" prior to being terminated in May 2024, and she "believes her termination was a direct result of her protected activity (reporting misconduct) and her disability." (Doc. No. 12 at 2.) These allegations are insufficient to state an ADA retaliation claim because Ruth's report about "illegal conduct" committed by managers is not a complaint concerning unlawful discrimination that would be protected by the ADA. Further, her "belief" that disability played a role in her termination is, on its own, insufficient to state a claim. *See Twombly*, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.") Without facts demonstrating that Ruth engaged in an activity protected under the ADA—including specific details about when the alleged protected activity took place, as well as which individual(s) participated in the adverse employment action(s), and facts showing a causal

---

[4] "Unlike a plaintiff in an ADA *discrimination* case, a plaintiff in an ADA *retaliation* case need not establish that [s]he is a 'qualified individual with a disability.' By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *See Gavurnik v. Vantage Labs, LLC*, No. 19-5537, 2020 WL 12729778, at *2 (E.D. Pa. June 26, 2020) (citing cases).

10

connection between the protected activity and the adverse employment action—Ruth has not asserted a plausible claim for ADA retaliation.

B.     **State Law Claim**

Ruth's remaining claim, wrongful termination in violation of public policy, arises under state law. Because the Court has dismissed Ruth's federal claims, the Court will not continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over her state law claim. Thus, Ruth must show the Court has an independent basis for asserting subject matter jurisdiction over her state law claim.

The only potential basis for jurisdiction is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)). An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain. *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011). A corporation is a citizen of the state in which it is incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c). It is the plaintiff's burden to establish diversity of citizenship. *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in

controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020). Because the Amended Complaint is silent on the citizenship of the parties and the amount in controversy, Ruth has not met her burden for establishing a basis for diversity jurisdiction, and her state law claim for wrongful termination is dismissed for lack of subject matter jurisdiction.[5]

## IV.  CONCLUSION

For the foregoing reasons, the Court dismisses Ruth's Amended Complaint in its entirety. Because Ruth was previously given an opportunity to correct her pleading deficiencies, all federal law claims are dismissed with prejudice and without leave to amend for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Posey v. Klinefelter*, No. 25-1428, 2025 WL 1937084, at *2 (3d Cir. July 15, 2025) ("A District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in [her] complaint, but chose not to resolve them.") (quoting *Krantz v. Prudential Invs. Fund Mgmt. LLC*, 305 F.3d 140,

---

[5] Even if Ruth had established diversity of citizenship, her state law claim of wrongful termination in violation of public policy is not plausible as pled. Pennsylvania is an "at-will" employment state, meaning that an employee "may be terminated at any time, for any reason or for no reason." *Stumpp v. Stroudsburg Mun. Auth.*, 658 A.2d 333, 335 (Pa. 1995). In Pennsylvania,

> the presumption of all non-contractual employment relations is that it is at-will, and that this presumption is an extremely strong one. An employee will be entitled to bring a cause of action for a termination of that relationship only in the most limited of circumstances where the termination implicates a clear mandate of public policy in this Commonwealth.

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000). "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.'" *Tanay v. Encore Healthcare, LLC*, 810 F. Supp. 2d 734, 737 (E.D. Pa. 2011) (quoting *Hunger v. Grand Cent. Sanitation,* 670 A.2d 173, 175 (Pa. Super. 1996)). The public policy exception has been strictly limited to situations when an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; or (3) discharges an employee when specifically prohibited from doing so by statute. *Id.* at 738 (citations omitted). Ruth has not identified any of the foregoing exceptions; she has not identified a clear public policy, nor has she pled that her termination resulted from a duty to act in accordance with public policy.

144 (3d Cir. 2002)); *see also Jones v. Unknown D.O.C. Bus Driver & Transportation Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (finding amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story"). Ruth's state law claim is dismissed for lack of subject matter jurisdiction. Dismissal of this claim is without prejudice to Ruth's right to pursue her state law claim in state court. An appropriate Order follows, which dismisses this case.